IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| MINISTER I-RAGUEL HANANIAH: IBN YAHWEH a/k/a ANDRE DALE GRAHAM, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | Civil No. 12-3074-JDT/tmp |
| SHELBY COUNTY GOVERNMENT, et al., | ) ) ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff is a resident of Memphis, Tennessee, who identifies himself as "Minister I-Raguel Hananiah: Ibn Yahweh Secured Party Creditor UCC 1/207-308 Ex. Rel. Andre Dale Graham" (hereinafter "Graham"). On December 13, 2012, Graham filed a *pro se* complaint alleging various causes of action against Shelby County Government, Shelby County Sheriff Deputies "Steele #3103" and "Thompson," Shelby County Sheriff William Oldham, and Shelby County District Attorney Amy Weirich.[1] On that same date, Graham filed a motion to proceed *in forma pauperis*. In an order issued on December 19,

---

[1]The complaint also purports to sue "JANE and JOHN DOES 1-20." (ECF No. 1 at 1.) The filing of a complaint against "Jane Doe" and "John Doe" defendants does not toll the running of the statute of limitations against those parties. See Cox v. Treadway, 75 F.3d 230, 240 (6th Cir. 1996); Bufalino v. Mich. Bell Tel. Co., 404 F.2d 1023, 1028 (6th Cir. 1968). It is recommended that the complaint be dismissed against the Doe defendants.

2012, the court granted Graham leave to proceed *in forma pauperis.* (ECF No. 3). Pursuant to the Order Referring Cases, this case is before the undersigned for a *sua sponte* review of plaintiff's complaint to determine whether the complaint, or any portion thereof, should be dismissed because it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.[2] 28 U.S.C. § 1915(e)(2)(B).

## I. PROPOSED FINDINGS OF FACTS

The following facts are taken from the allegations contained

---

[2] Graham states in his complaint that he does not consent to "any Magistrate(s) making any rulings in this case." (ECF No. 1 at 2.) 28 U.S.C. § 636(b)(1)(A) authorizes a Magistrate Judge to hear and determine any non-dispositive pretrial motion pending before the court. 28 U.S.C. § 636(b)(1)(A). With regard to dispositive motions, a Magistrate Judge may submit to the District Judge proposed findings of fact and recommendations for disposition. 28 U.S.C. § 636(b)(1)(B)-(C). By order entered on March 27, 2013, the presiding District Judge referred to the undersigned Magistrate Judge "all pretrial matters in [this case] within the Magistrate Judge's jurisdiction pursuant to 28 U.S.C. § 636(b)(1)(A) for determination; and all other pretrial matters in [this case] for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B)-(C)." (ECF No. 4, Order Referring Cases.) Consent of the parties is not required for a Magistrate Judge to rule on nondispositive matters or to submit a report and recommendation on a dispositive matter to a District Judge. See, e.g., Hardy v. Marble, No. 11-13008, 2012 WL 3870568, at *2 (E.D. Mich. Sept. 6, 2012) ("[C]onsent of the parties is not required to refer a matter to a magistrate judge for a report and recommendation under Section 636(b)."); see also Vitols v. Citizens Banking Co., 984 F.2d 168, 169 (6th Cir. 1993) (explaining the difference between referrals under § 636(c)(1), for which consent of the parties is required, and references under § 636(b), which are limited to nondispositive pretrial matters or recommendations on dispositive motions).

in the complaint.  During the evening hours of October 24, 2012, Graham was sitting in his parked vehicle when Deputy Steele approached in his patrol car and activated his blue emergency lights.  Deputy Steele asked Graham what he was doing in the vehicle, to which Graham replied that he was waiting to meet someone.  Deputy Steele then asked Graham to step out of his vehicle, but Graham refused.  Graham informed Deputy Steele that he (Graham) was "the executor and beneficiary of the estate" and that Deputy Steele was trespassing.  Deputy Steele "then threatened [Graham] with attack and injury" by telling Graham that he could either exit his vehicle voluntarily, or he could be pulled out of the vehicle.  A "Deputy Thompson" then arrived on the scene.  Deputy Thompson told Graham that he would break Graham's car windows with his night stick and would use his pepper spray if Graham did not exit the vehicle.  Graham finally relented, "under threat, duress, and coercion," and began to get out of his vehicle.  Once Graham opened the car door, however, Deputy Steele proceeded to pull him out of the vehicle by grabbing Graham's arm and neck.  Deputy Steele threw Graham on the ground face down, placed his knee into Graham's lower back, and apparently handcuffed him.  Graham stated that he had a history of lower back pain and told Deputy Steele that he wanted medical attention.  Within fifteen minutes an ambulance arrived, and he was seen by an emergency medical technician ("EMT").  The EMT told Graham that there seemed to be

nothing wrong with his back. Graham was released from the handcuffs and placed in the back of the ambulance. An unidentified deputy then informed Graham that the ambulance would take him to the hospital and from there he would be taken to jail because the deputies believed he was a "sovereign citizen." Graham denied he was a member of the sovereign citizen movement. After the ambulance transported Graham to the hospital, he was informed by an unidentified individual that he would be one of the last patients seen for that night and that he could either wait to be seen or go to jail to be processed and released. Graham claims that he "was then kidnapped and taken to Shelby County Jail against [his] will where [his] rights were further violated." Once at the jail, "the District Attorney General and her assignees further conspired to deprive [Graham] of [his] rights by falsely levying charges against [him]."

In his complaint, Graham brings several causes of action against Shelby County Government as well as Deputy Steele, Deputy Thompson, Sheriff Oldham, and District Attorney Weirich, in their official and individual capacity. Graham's complaint cites to 42 U.S.C. §§ 1983, 1985, 1986, and 1988, the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 et seq., and the Public Vessels Act, 46 U.S.C. § 31101 et seq. He seeks compensatory damages, punitive damages, and attorney's fees.

## II. PROPOSED CONCLUSIONS OF LAW

Pursuant to Local Rule 4.1(a), service will not issue in a *pro se* case where the *pro se* plaintiff has been granted leave to proceed *in forma pauperis* until the complaint has been screened under 28 U.S.C. § 1915(e)(2). The Clerk is authorized to issue summonses to *pro se* litigants only after that review is complete and an order of the court issues. This report and recommendation will constitute the court's screening.

The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action –

   (i)     is frivolous or malicious;

   (ii)    fails to state a claim on which relief maybe granted; or

   (iii)   seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678–679 (2009), and in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555–57 (2007), are applied. <u>Hill v. Lappin</u>, 630 F.3d 468, 470-71 (6th Cir .2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they

plausibly suggest an entitlement to relief.'" Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Iqbal, 556 U.S. at 681). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679; see also Twombly, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." Williams, 631 F.3d at 383 (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); see also Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (internal quotation marks omitted); Payne v. Sec'y of Treas., 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district

court is required to create Payne's claim for her"); cf. Pliler v. Ford, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); Young Bok Song v. Gipson, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

## A.   § 1983

### 1.   *Claims Against Shelby County*

When a § 1983 claim is made against a municipality such as Shelby County, the court must analyze two distinct issues: (1) whether plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120 (1992). A municipality "cannot be held liable *solely* because it employs a tortfeasor - or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (emphasis in original); Searcy v. City of Dayton, 38 F.3d 282, 286 (6th Cir. 1994); Berry v. City of Detroit, 25 F.3d 1342, 1345 (6th Cir.

1994). "The Supreme Court has held that a local government may not be held vicariously liable under § 1983 for injuries inflicted by its employees or agents." Hargrow v. Shelby Cnty., No. 13-2770, 2014 WL 3891811, at *3 (W.D. Tenn. Aug. 7, 2014) (citing Monell, 436 U.S. at 694). In order to sufficiently state a § 1983 claim against a local government, "a plaintiff must adequately plead (1) that a violation of a federal right took place, (2) that the defendants acted under the color of state law, and (3) that a municipality's policy or custom caused that violation to happen." Id. (quoting Bright v. Gallia Cnty., Ohio, 753 F.3d 639, 660 (6th Cir. 2014)). A plaintiff must plead that the constitutional violation resulted from a policy or custom by identifying:

> (1) The municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence to federal rights violations.

Id. at *4 (quoting Spears v. Ruth, 589 F.3d 249, 256 (6th Cir. 2009)). "A mere conclusory allegation that a city employed an unlawful policy or custom, without identifying the policy or stating a pattern of conformance to that custom, is not sufficient." Id. (citing Iqbal, 556 U.S. 662; Huffer v. Bogen, 503 F. App'x 455, 462 (6th Cir. 2012) (dismissing a § 1983 claim against a county defendant when the complaint "failed to identify any policy or custom that resulted in a constitutional violation"); Broyles v. Corr. Med. Servs., Inc., No. 08-1638, 2009 WL 3154241,

at *2 (6th Cir. Jan. 23, 2009) ("[B]are allegations of a custom or policy, unsupported by any evidence, are insufficient to establish entitlement to relief."); Rowland v. City of Memphis, No. 2:13-cv-02040-JPM-tmp, 2013 WL 2147457, at *5 (W.D. Tenn. May 15, 2013) ("[T]he three allegations in the Amended Complaint that refer to 'policies and procedures' are conclusory.")).

"To plead a policy of insufficient training adequately, the plaintiff must state facts showing that the municipality knew yet ignored that its training was lacking." Id. (citing Slusher v. Carson, 540 F.3d 449, 457 (6th Cir. 2008)). "The easiest way for an individual to meet her burden is to point to past incidents . . . that authorities ignored." Id. (quoting Birgs v. City of Memphis, 686 F. Supp. 2d 776, 780 (W.D. Tenn. 2010)). "Only where a failure to train reflects a deliberate or conscious choice by a municipality — a policy as defined by our prior cases — can a municipality be liable for such a failure under § 1983." Id. (quoting City of Canton v. Harris, 489 U.S. 378, 388–89 (1989)). "To plead adequately that a policy caused an injury, the complaint must plausibly allege that the identified policy 'was the moving force behind the deprivation of the plaintiff's rights.'" Id. (quoting Savoie v. Martin, 673 F.3d 488, 494 (6th Cir. 2012)).

In his complaint, Graham alleges that Shelby County "failed and/or neglected to properly train and supervise its employees, and especially its Prosecutor's [sic] and municipal judges, with

-9-

respect to the individual rights as protected by the Constitution as made evident by the several severe abuse(s) and damage(s) sustained by [plaintiff]." (ECF No. 1 at 7.) The complaint, however, does not identify any legislative enactments or official agency policies, any actions taken by officials with final decision-making authority, or any specific policy or custom of tolerance or acquiescence to federal rights violations. See id. at *5. Graham's claim of inadequate training and supervision is entirely conclusory because he alleges no facts to support it, nor does he offer facts to show that Shelby County knew yet ignored that its training or supervision of employees was lacking. Id. (granting Shelby County's motion to dismiss for failure to state a claim because plaintiff failed to adequately plead the existence of a policy or custom that caused the deprivation of constitutional rights); see also Cooper v. Rhea Cnty., Tenn., No. 1:13-CV-217, 2014 WL 3887885, at *4 (E.D. Tenn. Aug. 6, 2014) (granting county's motion to dismiss for failure to state a claim where plaintiff alleged that county had "customs, practices, and policies" that "facilitated a substantial risk of serious harm and injury to Plaintiff," and that sheriff "failed to properly train and supervise the Arresting Officers so as to prevent the serious bodily injuries suffered by the Plaintiff"). Graham's complaint fails to state a § 1983 claim against Shelby County.

2.  *Claims Against Sheriff Oldham, Deputy Steele, and Deputy Thompson*

The § 1983 claims against Sheriff Oldham, Deputy Steele, and Deputy Thompson in their official capacity are duplicative of the claim against Shelby County. "A suit against an individual 'in his official capacity' has been held to be essentially a suit directly against the local government . . . ." Leach v. Shelby Cnty. Sheriff, 891 F.2d 1241, 1245 (6th Cir. 1989). Therefore, because the § 1983 claims against Sheriff Oldham, Deputy Steele, and Deputy Thompson in their official capacity are essentially claims against Shelby County, it is recommended that the official capacity claims against these defendants be dismissed. See Petty v. Cnty. of Franklin, Ohio, 478 F.3d 341, 349 (6th Cir. 2007) ("To the extent that [the plaintiff's § 1983] suit is against [the sheriff] in his official capacity, it is nothing more than a suit against Franklin County itself.") (emphasis in original); Leach, 891 F.2d at 1245–46 (suit against mayor and county sheriff in their official capacity is a suit against the county, itself); Morris v. Christian Cnty. Sheriff's Dep't, No. 5:12CV-P156-R, 2013 WL 787971, at *4 (W.D. Ky. Mar. 1, 2013) (stating that claims against three sheriff's deputies in their official capacity were claims against the county).

The complaint fails to state a claim against Sheriff Oldham in his individual capacity. A failure of a supervisor to train an offending individual "'is not actionable absent a showing that the official either encouraged or in some way directly participated in

[the wrongful conduct]. At a minimum a plaintiff must show that the official at least implicitly authorized, approved or knowingly acquiesced'" in the alleged misconduct. Leach, 891 F.2d at 1246 (quoting Hays v. Jefferson, 668 F.2d 869, 874 (6th Cir. 1982)); see also Heyerman v. Cnty. of Calhoun, 680 F.3d 642, 646–48 (6th Cir. 2012) (finding that absent evidence of personal involvement in the alleged underlying misconduct, the defendant county official could not be individually liable based on her failure to train or supervise); Phillips v. Roane Cnty., Tenn., 534 F.3d 531, 543 (6th Cir. 2008) (finding that "three supervisors' collective failure to train their employees" was not sufficient evidence to hold them liable in their individual capacity since there was no evidence any of them participated in the incident of misconduct). Further, the Sixth Circuit has found that an attempt to hold an officer liable in his individual capacity for his "alleged failure to adequately train employees . . . 'improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability.'" Harvey v. Campbell Cnty., 453 F. App'x 557, 563 (6th Cir. 2011) (quoting Phillips, 534 F.3d at 543–44); see also Dillingham v. Millsaps, 809 F. Supp. 2d 820, 845 (E.D. Tenn. 2011) ("A general 'failure to train' claim has been routinely rejected by the Sixth Circuit in this context (trying to impose liability on a supervisor in his or her individual capacity)."). Graham's complaint is void of any allegation that Sheriff Oldham directly participated or

implicitly authorized, approved, or acquiesced in the alleged wrongful behavior. Accordingly, the claim against Sheriff Oldham in his individual capacity should be dismissed for failure to state a claim.

With regard to the § 1983 claims against Deputy Steele and Deputy Thompson in their individual capacity, Graham alleges that the deputies arrested him without probable cause and that they used excessive force during the arrest. A claim of excessive force in the course of making an arrest, investigatory stop, or other seizure of one's person invokes the protection of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person. <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989) (quoting U.S. Const. amend. IV); <u>see also</u> <u>Marvin v. City of Taylor</u>, 509 F.3d 234, 244 (6th Cir. 2007) (stating that a claim of "excessive force in the course of making an arrest . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard") (citation omitted). "A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." <u>Voyticky v. Vill. of Timberlake, Ohio</u>, 412 F.3d 669, 677 (6th Cir. 2005). It is submitted that the complaint sufficiently states a claim for relief under § 1983 against Deputy Steele and Deputy Thompson in their individual capacity.

3. *Claims Against District Attorney Weirich*

District Attorney Weirich is a state employee, Tenn. Code Ann. § 8-42-101(3)(A), such that a claim against her in her official capacity is in essence a claim against the State. Edelman v. Jordan, 415 U.S. 651, 663 (1974). Suing a state officer in her official capacity for damages is equivalent to suing the state itself, which is prohibited by the Eleventh Amendment, Wells, 891 F.2d at 592, unless the State has waived its immunity, Welch v. Tex. Dep't of Highways & Pub. Transp., 483 U.S. 468, 473 (1987) (plurality opinion), or "unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989). In that regard, the Supreme Court has expressly held that the State is not a "person" subject to suit under § 1983, and that 42 U.S.C. § 1983 does not abrogate Eleventh Amendment immunity. Id. at 64, 65. Nor has the plaintiff shown that the State of Tennessee has waived its immunity. Cf. Berndt v. Tennessee, 796 F.2d 879, 881 (6th Cir. 1986). In short, the federal courts do not have subject-matter jurisdiction over causes of actions against officers of a state who are sued in their official capacity for damages. See Cummings v. Wilkerson, No. 96-3646, 1998 WL 30803, at *1 (6th Cir. Jan. 23, 1998). Accordingly, to the extent Graham brings claims against District Attorney Weirich in her official capacity, such claims must be dismissed for

lack of subject matter jurisdiction.

Insofar as Graham seeks damages against District Attorney Weirich in her individual capacity, that claim is barred under common-law principles of absolute prosecutorial immunity insofar as the acts for which she is sued fall within the scope of her prosecutorial duties. See <u>Imbler v. Pachtman</u>, 424 U.S. 409, 427 (1976) (holding that prosecutorial immunity encompasses immunity from § 1983 claims). Moreover, such immunity applies even where the plaintiff alleges that the prosecutor has acted with malice or dishonesty, <u>id.</u> at 427, or that the prosecutor knowingly presented false testimony at trial, <u>id.</u> at 431 n.34. Prosecutors also have absolute immunity for appearances at probable cause and grand jury hearings; evaluation of evidence and presentation of that evidence at pre-trial and trial proceedings; and preparation of witnesses for trial. <u>Spurlock v. Thompson</u>, 330 F.3d 791, 797 (6th Cir. 2003). It is recommended that all claims against District Attorney Weirich, in both her official and individual capacity, be dismissed.

**B.  §§ 1985, 1986, and 1988**

To succeed on a claim brought under 42 U.S.C. § 1985(3), "a plaintiff must prove (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a

person or property, or a deprivation of any right or privilege of a citizen of the United States." Johnson v. Hills & Dales Gen. Hosp., 40 F.3d 837, 839 (6th Cir. 1994). The plaintiff must allege that "the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus." Bass v. Robinson, 167 F.3d 1041, 1050 (6th Cir. 1999); see Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267–68 (1993); Estate of Smithers ex rel. Norris v. City of Flint, 602 F.3d 758, 765 (6th Cir. 2010) ("To sustain a claim under section 1985(3), a claimant must prove both membership in a protected class and discrimination on account of it."). Graham has failed to allege any facts indicating that any of the defendants' actions were motivated by any racially discriminatory animus or animus based on national origin, and therefore, his § 1985 claim should be dismissed.[3] Additionally,

---

[3]Graham does not specify which subsection of § 1985 he believes defendants' actions violated. From the complaint's allegations, the court will assume Graham's § 1985 claim is brought under subsection (3). Subsection (1) is inapplicable, because Graham's complaint does not address a conspiracy that prevented an officer from performing his duties. See 42 U.S.C. § 1985(1). The first clause of subsection (2) is also inapplicable, because Graham does not allege that any of the defendants conspired with others to intimidate or deter witness testimony, or to influence a juror. See § 1985(2). To the extent Graham may have intended to bring his claim under the second clause of § 1985(2), which "prohibits conspiracies to interfere with due process in state courts with the intent to deprive persons of their equal protection rights," see Fox v. Mich. State Police Dep't, 173 F. App'x 372, 376 (6th Cir. 2006), that claim would also fail, because under the second clause of § 1985(2), like under § 1985(3), a plaintiff must allege "that there was 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" Id. (quoting Kush v. Rutledge, 460 U.S. 719, 726

because Graham has failed to state a claim under § 1985, his claim under § 1986 likewise fails. See Braley v. City of Pontiac, 906 F.2d 220, 227 (6th Cir. 1990) ("Where a plaintiff has stated no cause of action under § 1985, no cause of action exists under § 1986."); Andrews v. Flaiz, No. 1:14 CV 623, 2014 WL 4925044, at *16 (N.D. Ohio Sept. 30, 2014) ("Section 1986 imposes liability on those individuals who have knowledge of any of the wrongs prohibited by § 1985, yet fail to prevent them. Without a violation of § 1985, there can be no violation of § 1986.").

Graham also alleges violations of 42 U.S.C. § 1988; however, this section does not itself provide a cause of action. Moor v. Alameda Cnty., 411 U.S. 693, 710 (1973); Henderson v. Reyda, 192 F. App'x 392, 397 (6th Cir. 2006); Vaughan v. City of Shaker Heights, No. 1:10-CV-0609, 2011 WL 5966808, at *1 n.2 (N.D. Ohio Aug. 30, 2011), report and recommendation adopted, 2011 WL 5966732 (N.D. Ohio Nov. 28, 2011); Cortis v. City of Coleman, No. 10-13261-BC, 2011 WL 1518901, at *6 (E.D. Mich. Apr. 20, 2011). Moreover, a *pro se* litigant is not entitled to attorney's fees under § 1988. Palmer v. Town of Jonesborough, No. 2:08-cv-345, 2009 WL 1255780, at *11 (E.D. Tenn. May 1, 2009) (citing Wright v. Crowell, 674 F.2d 521, 522 (6th Cir. 1982)). Accordingly, it is recommended that any claim under 42 U.S.C. § 1988 be dismissed.

---

(1983)); see Dallas v. Holmes, 137 F. App'x 746, 752 n.5 (6th Cir. 2005).

## C. Miscellaneous Claims

Graham's complaint contains references to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602–1611, which applies to claims against sovereign states. Under the FSIA, "a foreign state is presumptively immune from the jurisdiction of United States courts," and "unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993); see also 28 U.S.C. § 1604 (providing that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter"). The complaint also cites the Public Vessels Act, 46 U.S.C. § 31101 ("PVA"). The PVA waives sovereign immunity for suits for "damages caused by a public vessel of the United States." 46 U.S.C. § 31102(a)(1). Neither of these acts apply in this case. Therefore, to the extent Graham seeks to bring claims under these acts, it is recommended that those claims be dismissed.

## III. RECOMMENDATION

For the reasons above, it is recommended that all claims against Shelby County, Sheriff Oldham in his official and individual capacity, Deputy Steele and Deputy Thompson in their official capacity, and District Attorney Weirich in her official and individual capacity, be dismissed *sua sponte* pursuant to 28

U.S.C. § 1915(e)(2)(B). As for the remaining § 1983 claims against Deputy Steele and Deputy Thompson in their individual capacity, it is recommended that an order be entered directing the Clerk of Court to issue process for these two defendants and deliver that process to the Marshal for service.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

November 14, 2014
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**